UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSIAH JOHNSON, | ) | |
| JENNIFER JOHNSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00658-TWP-MG |
| | ) | |
| JEREMIAH JOHNSON, | ) | |
| THE ALTAR GLOBAL, INC, | ) | |
| PAUL JOHNSON, | ) | |
| PAUL T. JOHNSON MINISTRIES, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss Amended Complaint filed by Defendants Jeremiah Johnson ("Jeremiah"), The Altar Global, Inc., Paul Johnson ("Paul"), and Paul T. Johnson Ministries. (Filing No. 43). Brothers Josiah Johnson ("Josiah"), Jeremiah, and Paul are all evangelical ministers. They unfortunately began disparaging each other privately and online, and this defamation lawsuit followed. Josiah and his wife, Jennifer Johnson (together, "Plaintiffs"), assert claims for defamation and conspiracy against Jeremiah, Paul, and their respective ministries, The Altar Global, Inc., and Paul T. Johnson Ministries (collectively, "Defendants"). For the following reasons, the Motion to Dismiss is **denied**.

### I.   BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). These background facts are not intended to provide a comprehensive

explanation of all the facts presented in this case; rather, it provides the background relevant to the issues before the Court.

In 2019, Josiah privately confronted Jeremiah about Jeremiah's "plagiarism and fabrication of prophesies," including his incorrect prediction that Donald Trump would be re-elected in 2020 (Filing No. 1 ¶ 11). Josiah then addressed "Jeremiah's pattern of plagiarism" in a Facebook post, which garnered the attention of several news outlets. *Id.* ¶ 13.

In response, Jeremiah and Paul allegedly conspired to publish an article about Josiah to defame and discredit him. *Id.* ¶¶ 15–16. Paul, as Jeremiah's proxy, collected "critical statements about Josiah" from dozens of people under the false pretense that the information would only be used privately. *Id.* ¶¶ 16, 23. Paul then published the article titled "*Josiah Johnson: A Dangerous & Divisive Man, A Warning to the Body of Christ*" (the "Article"), on his ministry's website (Filing No. 14 at 24–56). The Article contains statements by the author, Paul, as well as statements and testimonials from several individuals. The Court will not detail the thirty-three-page Article here. Suffice it to say that the Article accuses Josiah and Jennifer of various types of misconduct throughout the course of their ministry. *Id.* ¶ 20. Jeremiah also posted a link to the Article on his ministry's Facebook page. *Id.* ¶ 15.

As a result of the Article's publication, Josiah lost his job, and Jennifer was forced to abandon her real estate business. *Id.* ¶¶ 47–48, 62–64. Plaintiffs also suffered public humiliation and attacks on social media. They were told to move by multiple people and ultimately moved from Alabama to Texas, where the defamation continues to harm their reputations. *Id.* ¶¶ 49–50, 61.

Plaintiffs initiated this action in Texas, but it was soon transferred to this Court. Plaintiffs then filed their Amended Complaint, which is the operative pleading, asserting defamation and

2

conspiracy claims against Defendants. Defendants seek dismissal of the Amended Complaint, and their motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Defendants argue the Court to decline to adjudicate Plaintiffs' claims as required under the Ecclesiastical Abstention Doctrine, and that Plaintiffs have failed to state a claim upon which relief may be granted. The Court will address these arguments in reverse order.

**A.** **Failure to State a Claim**

The Court begins with two preliminary issues. First, the Court must determine whether Texas or Indiana law applies to Plaintiffs' claims. To determine which state's substantive law should apply, "a district court sitting in diversity must apply the choice of law principles of the forum state (in this case Indiana)."[1] *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013) (citation modified). In tort actions, Indiana courts first determine "whether the differences between the laws of the states are important enough to affect the outcome of the litigation." *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (citation modified). If there is no conflict between the purpose or policy of both states' laws, then the forum's law applies. *Klein v. Depuy, Inc.*, 476 F. Supp. 2d 1007, 1010 (N.D. Ind. 2007) (citing *Lutz v. DeMars*, 559 N.E.2d 1194, 1196 n.1 (Ind. Ct. App. 1990)). Defendants contend there is no such conflict between the laws of Indiana, Texas, or Alabama. Plaintiffs do not disagree. The Court applies Indiana law.

Second, the Court resolves a dispute about the scope of Plaintiffs' defamation claims. In their brief, Defendants primarily focus on the defamatory statements identified in the "Claims" section of the Amended Complaint, and they argue that Plaintiff cannot rely on any statements in

---

[1] The Texas court transferred this action under 28 U.S.C. § 1401(a), but because that court lacked personal jurisdiction over Defendants, transfer was proper under § 1406 (Filing No. 16 at 2). This distinction matters for purposes of determining which forum's choice-of-law provision applies. "A Section 1404(a) transferee court applies the law of the transferor court (here, [Texas]); a Section 1406(a) transferee court applies its own (here, [Indiana])." *Connor v. Kotchen*, No. 18-cv-1118, 2019 WL 1298585, at *2 (S.D. Ind. Mar. 21, 2019). The parties do not dispute that Indiana's choice-of-law rules apply, and the Court applies Indiana's choice-of-law rules.

the "Facts" section because they were not realleged or expressly incorporated into the "Claims" section (Filing No. 44 at 10–12, 17). The Court disagrees.

Federal Rule of Civil Procedure 8 does not require plaintiffs to incorporate allegations throughout a Complaint, and Rule 8(e) counsels that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019) ("A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case."); *see also Jagers v. Sagittarius Sporting Goods, Co., Ltd.*, No. 16-cv-4242, 2017 WL 6945589, at *2 (C.D. Ill. July 26, 2017) (assuming in the interest of justice that plaintiff meant to reincorporate certain allegations into three counts). The Court reads the Amended Complaint as alleging defamation based on the allegedly defamatory statements identified in the Amended Complaint, including those in the "Facts" section.

The Court now turns to the sufficiency of Plaintiffs' Amended Complaint. A plaintiff claiming defamation must show: "(1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). In their Motion to Dismiss, Defendants dispute only the first element, arguing that the allegedly defamatory statements in the Article are all opinions and/or rhetorical hyperbole.

"Opinions . . . are sometimes determined to be outside the reach of a defamation claim. An opinion is not actionable if it does not contain any provably false factual assertions." *Piersen v. Nat'l Inst. for Lab. Rels. Rsch.*, 319 F. Supp. 3d 1100, 1109 (N.D. Ind. 2018) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 n.7 (1990)); *see also Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998) (holding that the statement "[plaintiff] is a very poor lawyer" was unactionable because it did not convey a verifiable falsehood like the statement "[plaintiff] lost every case he

5

has tried" would have). Rhetorical hyperbole is also typically protected. *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). Rhetorical hyperbole "consists of terms that are either too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying assertions; and in the latter case the issue dissolves into whether those assertions are defamatory." *Id.* ("If you say simply that a person is a 'rat,' you are not saying something definite enough to allow a jury to determine whether what you are saying is true or false. If you say he is a rat because . . . , whether you are defaming him depends on what you say in the because clause." (omission in original)).

The parties agree that many of the statements in the Article are protected opinions or vague hyperbole, like the statements that Josiah lacks "Christlike character" and "godly qualifications." Plaintiffs do not base their defamation claims on these statements (Filing No. 47 at 14). Plaintiffs only challenge specific statements of alleged fact about their behavior and actions. *Id.*

Statements are not necessarily "shielded from an action for defamation" whenever they are presented as opinions or hyperbole. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). A statement is not actionable "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise," but may be actionable when made by a speaker "claiming to be in possession of objectively verifiable facts." *Haynes*, 8 F.3d at 1227. The dispositive question, then, "is whether a reasonable fact finder could conclude that the statement implies facts which may be proven true or false." *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 66 (Ind. Ct. App. 1999).

The statements regarding Plaitniffs' reported pattern of misconduct are capable of a defamatory imputation. The Article accuses Josiah of "intimidation," "slander," "manipulation," and "lying," among other things. These are definite concepts with precise meanings. (Filing No. 14 ¶¶ 18, 54–55, 57 & p. 24–26); *see Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008); Ind.

6

Code § 35-45-2-1 (defining offense of intimidation); *Slander*, Black's Law Dictionary (12th ed. 2024) ("A defamatory assertion expressed in a transitory form, esp. speech"); *Manipulation*, Merriam–Webster Online Dictionary, https://www.merriam-webster.com/dictionary ("to change by deceptive or unfair means so as to serve one's purpose"); *Lying*, Merriam–Webster Online Dictionary ("marked by or containing untrue statements"). The statement that Plaintiffs "deceived and divided many innocent and unsuspecting people and families" can also be concretely defined. (Filing No. 14 ¶¶ 18–19, 22 & pp. 25); *Deceive*, Merriam–Webster Online Dictionary ("to cause to accept as true or valid what is false or invalid"); *Divide*, Merriam–Webster Online Dictionary ("to separate into opposing sides or parties").

Defendants argue that these statements are not false (Filing No. 44 at 16–17), but at this stage, the Court must accept Plaintiffs' allegations of falsity as true. Defendants will have an opportunity to prove truthfulness after discovery, at summary judgment or at trial. *See Near E. Side Cmty. Org. v. Hair*, 555 N.E.2d 1324, 1330 (Ind. Ct. App. 1990) ("Truth is a defense to a claim of defamation, but the defamer bears the burden of proof.").

The above aspersions, in a vacuum, may be mere opinions or hyperbole, but in context of the Article, they are actionable. The Article itself claims that the speaker (Paul) is knowledgeable of the factual predicates for these claims. The Article begins by stating that Paul "carefully observed Josiah Johnson's life and ministry" for "over a decade." (Filing No. 14 at 24). The Article "explicitly, yet not exhaustively, details some of the destruction and division" caused by Plaintiffs. *Id.* The Article also purports to offer "evidence" of its claims and "a small but accurate window into Josiah's pattern of threatening and intimidating people." *Id.* at 25–26. The Article also offers testimonials from several individuals as "evidence" of the allegedly defamatory statements about Plaintiffs. The fact that these testimonials might contain no outright falsehoods does not warrant

7

dismissal of Plaintiffs' claims. "[I]f the speaker states the facts upon which he bases his opinion, if those facts are either incorrect *or incomplete*, or if his *assessment of them is erroneous*, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18–19 (emphases added). Plaintiffs allege that these testimonials omit contextual information and are being misinterpreted by Defendants, so the testimonials may support a defamation claim.

Drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs have identified statements capable of having defamatory meanings. *See Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999). Plaintiffs have therefore adequately alleged defamation claims against Defendants. *McQueen*, 711 N.E.2d at 67 (reversing dismissal of defamation claims based on statement that plaintiff had "destroyed and undermined the girls' [basketball] program " (alteration in original)).

To be clear, the Court is not holding that only the above statements are actionable. At this early stage in litigation, the Court need not delve into the merits of Plaintiffs' claims with respect to each individual underlying statement. The Court must only determine whether the Amended Complaint states any valid claim for relief, and the Court finds that it does. *See Hampton v. Perry*, No. 20-cv-759, 2020 WL 4430586, at *1 (S.D. Ind. July 31, 2020) ("Rule 12(b)(6) will be invoked to dismiss a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." (citations omitted)); *Journal-Gazette Co.*, 712 N.E.2d at 457 ("It is a question of law for the court to decide whether a statement considered in its entirety is capable of possessing a defamatory meaning or implication. If a statement is susceptible to both defamatory and non-defamatory meanings, the matter of interpretation should be left to the jury." (citations omitted)). Defendants are therefore not entitled to dismissal of Plaintiffs' defamation claims.

Defendants' motion for dismissal of Plaintiffs' conspiracy claims are based solely on the argument that if Plaintiffs' defamation claims fail, so must their conspiracy claims. Because Plaintiffs' defamation claims have survived dismissal, their conspiracy claims do, too. Defendants' Motion to Dismiss for failure to state a claim is **denied**.

**B.**     **Ecclesiastical Abstention Doctrine**

Plaintiffs argue the Ecclesiastical Abstention Doctrine does not apply to this action, because Defendants cannot show any ecclesiastical dispute. (Filing No. 47 at 4). Defendants argue that this action "is a religious dispute between evangelical ministers," so judicial involvement is barred by the Ecclesiastical Abstention Doctrine. The Ecclesiastical Abstention Doctrine, also called the church autonomy doctrine, derives from the Religion Clauses of the First Amendment and "protects against government interference in 'faith and doctrine' and 'matters of church government.'" *Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1111 (7th Cir. 2013) (quoting *Our Lady of Guadalupe Sch. v. Morrisset-Berru*, 591 U.S. 732, 746 (2020)).

Defendants rely on the Seventh Circuit's decision in *Demkovich v. St. Andrew the Apostle Parish Calumet City*, 3 F.4th 968 (7th Cir. 2021), but *Demkovich* is distinguishable. The plaintiff in *Demkovich*, a gay disabled man, was hired as the music director (a ministerial role) for a Roman Catholic church. The plaintiff was harassed by the church's reverend (another ministerial employee) before being terminated. *Id.* at 973. The plaintiff sued the church for employment discrimination, claiming that he was fired because of his sex, sexual orientation, marital status, and disability. The district court held that the ministerial exception to Title VII of the 1964 Civil Rights Act barred all the plaintiff's claims except his disability-based hostile work environment claims. *Id.* at 973–74. "The church offered no religious justification for these claims, so the district court did not see the same risks of excessive entanglement present in adjudicating the sex, sexual orientation, and marital status claims." *Id.* at 974.

On appeal, the Seventh Circuit reversed the district court's decision denying dismissal of the disability claims and held that the ministerial exception to Title VII bars all claims based on minister-on-minister harassment, regardless of the reason for the harassment. In reaching this decision, the Seventh Circuit discussed the church autonomy doctrine, which mandates that churches have "independence in matters of faith and doctrine and in closely linked matters of internal government." *Id.* at 975. The court explained that "a church's independence on matters of faith and doctrine requires the authority to select, supervise, and if necessary, remove a minister without interference by secular authorities." *Id.* at 976 (citation modified). The church's supervision of the plaintiff in *Demkovich* was therefore "as much a component of its autonomy as is the selection of the individuals who play certain key roles." *Id.* at 979 (citation modified) (stating that the independence of a religious organization matters not only "at the beginning (hiring) and the end (firing) of the ministerial relationship," but also "in between (work environment)"). Were a court to "prob[e] the ministerial work environment," it would intrude upon the religious organization's "right to shape its own faith and mission." *Id.* at 980 (citation modified).

This case, by contrast, does not implicate Defendants' right to shape or govern their ministries. Plaintiffs do not challenge Defendants' statements regarding religious beliefs, doctrines, or opinions (Filing No. 47 at 6). Plaintiffs are not ministers or employees of The Altar Global or Paul T. Johnson Ministries. *Cf. Demkovich*, 3 F.4th at 989 (Hamilton, J., dissenting) ("[A]ll members of this court agree that churches and their ministers are subject to civil law—including tort . . . law—for wrongs committed against parishioners and others. . . . In each of these types of cases, there is some risk of burdening religious liberty and entangling civil and religious affairs. But the First Amendment does not categorically defeat any of them."). Nor were the statements at

10

issue made solely to Defendants' congregations (*see* Filing No. 47 at 8–9 n.1). The Court has no occasion to decide whether, in those circumstances, the church autonomy doctrine would apply.

The allegedly defamatory statements also do not necessarily implicate or conflict with any church doctrines. *E.g.*, *McCarthy v. Fuller*, 714 F.3d 971, 975–76. (7th Cir. 2013) (finding that district court erred in allowing a jury to decide whether defendants defamed plaintiff by calling her a "fake nun," where the governing body of plaintiff's church had issued a statement that she was no longer a nun). Plaintiffs allege that Defendants published verifiable, non-doctrinal falsehoods publicly. Judicial involvement in this case does not pose the risk of intrusion into church independence that was present in *Demkovich*.

The Court agrees with Plaintiffs that the recent case *Garrick v. Moody Bible Institute*, 95 F.4th 1104 (7th Cir. 2024) is more helpful here. In *Garrick*, one of the defendant's religious tenets was complementarianism—that only men should be clergy, although men or women could serve in non-clergy roles. *Id.* at 1106. The plaintiff, a woman, was hired into a non-clergy role. *Id.* The plaintiff claimed that she was subjected to a hostile work environment and treated less favorably than her male counterparts. *Id.* at 1107. The defendant moved for dismissal under Title VII's religious exemptions and the church autonomy doctrine, but the district court denied the motion. The defendant requested appellate review of the interlocutory order.

The Seventh Circuit denied the request for interlocutory review, but in doing so, confirmed that "[t]he church autonomy doctrine does not . . . bar courts from adjudicating *all* disputes involving a religious institution." *Id.* at 1112 (emphasis in original). "Courts may exercise authority when the resolution does not require inquiry into doctrinal disputes." *Id.* In some cases, the parties' dispute may have both religious and secular elements. In *Garrick*, the Seventh Circuit explained that "[w]hile certain distinctions between men and women will be off-limits, because they

implicate complementarianism . . . many distinctions will not," and those distinctions "will not subject [the defendant's] doctrine to judicial second-guessing." *Id.* at 1113.

The fact that the Article contains religious elements and was published by ministers about another minister does not make the parties' disputes doctrinal disputes or shield Defendants from defamation claims (Filing No. 47 at 9–10 ("While it is true there are numerous disparaging allegations in the article that *are* covered by the ecclesiastical doctrine because they concern matters of Biblical interpretation, these allegations do not form the basis of Plaintiffs' claims." (emphasis in original))). The parties' disputes are capable of resolution using neutral principles of law. *See Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022) (citing *Jones v. Wolf*, 443 U.S. 595, 602–03 (1979)), *cert. denied*, 142 S. Ct. 2609 (2023) ("[S]ecular components of a dispute involving religious parties are not insulated from judicial review; a court may use the 'neutral principles of law' approach.").

As Plaintiffs note in their response, they "do not ask the Court to declare who is holier." *Id.* at 8. Plaintiffs likewise do not ask the Court to inject itself into a dispute over a "a religious leader claiming from the pulpit that ministers or adherents of other faiths are 'infidels,' 'heretics,' or 'non-believers.'" (Filing No. 44 at 9). Plaintiffs' claims are based on non-doctrinal statements of fact. The Court will not be wading into ecclesiastical matters by adjudicating whether those statements are defamatory. Defendants' request to dismiss this action based on the Ecclesiastical Abstention Doctrine is **denied**.

## IV.     CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss the Amended Complaint (Filing No. 43) is **DENIED**. Because the Motion to Dismiss is now resolved, the **stay** of this case is **LIFTED** (Filing No. 53). The parties are **DIRECTED** to contact the chambers of the Magistrate

Judge to schedule a status conference, at which the parties can discuss new case management deadlines, trial dates, and the possibility of settlement.

**SO ORDERED**.

Date:   3/12/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Kathryn Wilburn Drey
Gaines, Goodspeed & Juba PC
kathryn@mychurchlawfirm.com

Dustin Gaines
Gaines, Goodspeed & Juba, P.C.
dustin@mychurchlawfirm.com

Warren Norred
Norred Law PLLC
warren@norredlaw.com